UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

MELVIN HALE,                          )
                                      )
        Plaintiff,                    )
                                      )        No. 6:24-CV-86-REW-HAI
v.                                    )
                                      )        OPINION & ORDER
BELL COUNTY FISCAL COURT, *et al.*,   )
                                      )
        Defendants.                   )
                                      )

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Melvin Hale's motion to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. *See* DE 40 (Motion); DE 41 (Memorandum in Support). For the reasons that follow, the Court denies Hale's Motion. Hale has not met his burden of affirmatively demonstrating entitlement to class certification under the guideposts of Rule 23, applied here with required rigor.

## I.    Background

The Court draws the facts from Hale's Complaint (DE 1) and Motion in assessing class propriety. Hale alleges that on or about April 20, 2022, as a pretrial detainee at Bell County Detention Center ("BCDC"), Defendants Gary Ferguson, Joshua Collett, and Chad Money, all working as jailers at BCDC, ordered Hale to remove his clothes and put on an anti-suicide smock, which Hale refers to as a "turtle suit." *See* DE 1 at 7 ¶¶ 38-39. Hale did not comply, instead requesting those Defendants' help in connection with a mental health episode Hale was experiencing "because he took 90 pills before he came into jail." *See id.* ¶ 41. Defendants Collett and Money then allegedly forcibly removed Hale's clothes as Hale continued to request help. *See*

*id.* ¶¶ 44, 46-47.  Defendant Ferguson recorded Defendants Collett and Money removing Hale's clothes.  *See id.* ¶ 48.  Hale claims that this video, which purportedly shows him completely naked, was posted on Defendant Tommy Shackleford's[1] social media accounts on or about September 7, 2023.  *See id.* ¶¶ 50-51.  Hale, who had asked Ferguson to video the event, *see* DE 46-3 at 2:1-5, did not consent to this video being posted on the internet.  *See* DE 1 ¶ 53.

Hale initiated this suit on his own behalf and on behalf of all others similarly situated, alleging several causes of action under 42 U.S.C. § 1983 (Counts I through V), a violation of the Americans with Disabilities Act (Count VI), and various state-law tort claims (Counts VII through X).  *See id.* at 11-25.  Hale now moves for class certification under Rule 23, seeking certification of the following class, as defined in his Motion[2]: "plaintiffs who from April 1, 2019, to the present, were or are inmates housed at BCDC and were the subjects of videos or images that were posted on the internet without their consent."  DE 41 at 3.  The Complaint phrased it as: "all formerly and currently incarcerated pretrial detainees who, from April 1, 2019 to the present, were or are inmates housed at BCDC and were the subjects of videos that were posted on the internet without their consent."  DE 1 at ¶ 58.  Hale's Complaint also proposes a subclass for the inmates in the proposed class who qualified as having a disability under the ADA.  *See* DE 1 ¶ 73.  The subclass question

---

[1] Hale moved for default judgment against Defendant Shackleford, *see* DE 28, and the Clerk filed an entry of default on September 5, 2025, *see* DE 29.  Shackleford has no obvious connection to the Jail or any of the parties.

[2] Defendants Collett, Money, and Venable note that Hale's Complaint defines the class as "all formerly and currently incarcerated *pretrial detainees* who, from April 1, 2019 to the present, were or are inmates housed at BCDC and were the subjects of videos that were posted on the internet without their consent."  DE 1 at 8 ¶ 58 (emphasis added).  Those Defendants point out that the Motion's definition—including all inmates meeting the rest of the conditions—might be more expansive.  *See* DE 45 at 3.  However, Defendants do not argue that the Court should evaluate the Complaint definition, instead of the Motion definition, under the Rule 23 strictures.  Further, a slight definitional refinement that does not add new theories of the case or otherwise dramatically change the analysis is permissible.  *See, e.g.*, *Morse v. Fifty W. Brewing Co. LLC*, No. 1:21-cv-377, 2026 WL 872495, at *24 (S.D. Ohio Mar. 30, 2026); *Harbin v. Emergency Coverage Corp.*, No. 3:16-CV-125, 2017 WL 1397252, at *2 (E.D. Tenn. Mar. 23, 2017).  The Court sees little prejudicial risk of treating the Motion definition as the operative proposed class definition and will therefore consider the Motion definition.

is not the motion's target.  Defendants Joshua Collett, Chad Money, and Robin Venable responded in opposition, *see* DE 45, and Defendants Bell County Fiscal Court and Gary Ferguson responded in opposition, *see* DE 46.  Hale replied.  *See* DE 47.  The matter now stands ripe for review.

## II.    Legal Standard

A class action suit is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 99 S. Ct. 2545, 2558 (1979)) (internal quotation marks omitted).  District courts are afforded substantial discretion in determining whether to certify a class due to its "inherent power to manage and control its own pending litigation."  *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015) (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007)).

Federal Rule of Civil Procedure 23 governs class certification.  To certify a class, the party seeking certification must first satisfy the requirements of subsections (a) and (b) of Rule 23.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  The Rule 23(a) requirements are four-fold—the party seeking certification must demonstrate each of the following:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  Ultimately, these four requirements "serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).  Failure to satisfy any of the four

requirements dooms the certification effort. *See Lyngaas v. Curaden Ag*, 992 F.3d 412, 428 (6th Cir. 2021). In addition to fulfilling the Rule 23(a) requirements, a class must fall within one of the three class types listed in Rule 23(b). *See id.* The party seeking class certification bears the burden of proof. *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

Rule 23 "is not merely a pleading standard." *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 315 (6th Cir. 2025). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule[.]" *Dukes*, 131 S. Ct. at 2551. As such, district courts may be required to search beyond the pleadings into the proof to determine whether sufficient evidence supports the plaintiff's certification request. *See id.* The district court must conduct a "rigorous analysis" of the Rule 23 requirements to ensure they are satisfied. *See id.* While Rule 23 "grants courts no license to engage in free-ranging merits inquiries…[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

## III.    Analysis

### a.    Rule 23(a)

As stated, Hale must affirmatively prove all Rule 23(a) labeled "prerequisites" to receive class certification. The Court briefly comments on the proposed subclass. Though including a subclass definition in the Complaint and premising a claim on it (Count VI), Hale makes nary a mention of the subclass in his Motion. Given his burden of affirmatively demonstrating the certification requirements, the Court denies the motion as to the subclass. There is simply no proof to support the class, so the Court will not engage in an exhaustive review. The Court now considers each prerequisite with respect to the proposed class.

4

### i.    Numerosity

Hale must demonstrate that "the class is so numerous that joinder of all members is impracticable[.]"  FED. R. CIV. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.  Courts are to analyze numerosity under the specific facts of each case, but a class size of "substantial proportions" normally suffices.  *Id.*  "Classes generally run in the hundreds or thousands, though we've permitted one of thirty-five before."  *Bowles v. Sabree*, 121 F.4th 539, 552 (6th Cir. 2024) (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012)).

Hale asserts that the approximately forty-five inmates present in videos taken by Defendant Ferguson satisfy the numerosity requirement.  *See* DE 41 at 7.  As evidence of this numerical figure, Hale cites deposition testimony of two BCDC employees, Ardith Miller and Katie Cox, each of whom viewed certain videos and acknowledged multiple inmates being visible.  *See id.* at 6-7; DE 40-2 at 18-19, 25, 30, 34, 39, 44 (Miller acknowledging videos of multiple inmates); DE 40-3 at 23, 26-28 (Cox acknowledging videos of multiple inmates).  Also, Defendant Ferguson did not dispute that approximately forty-five inmates appear in the videos.  *See* DE 41 at 7; DE 40-1 at 113.

The issue with Hale's numerosity argument lies in his class definition.  As mentioned, Hale's proposed class includes inmates housed at BCDC that were "the subjects" of videos or images that were posted without consent.  *See* DE 41 at 3.  Though Defendants agree that the aggregate number of inmates in the videos may number approximately forty-five, they contend that many are simply in the jail background and are therefore not "subjects" of the pertinent videos.  *See* DE 45 at 5-6; DE 46 at 12.  Black Law's Dictionary defines a subject, in this context, as "[t]he matter of concern over which something is created[.]"  *Subject*, BLACK LAW'S DICTIONARY (12th

5

ed. 2024). Hale, effectively conceding that many of the purportedly countable inmates are not the "matter of concern" and are instead mere background characters, asks the Court to overlook this definitional technicality because "every inmate depicted in a video recorded without consent and disseminated publicly without consent suffered an invasion of privacy, regardless of whether that inmate was a primary subject or visible in the background." DE 47 at 5. This seems a dramatic step away from the putative constitutional tort. Plaintiff cites generic retained privacy interests of inmates but cites only the particular circumstance of an inmate strip searched in a manner visible to others. *See* DE 1 ¶ 87 (citing *Sumpter v. Wayne Cnty.*, 868 F.3d 473 (6th Cir. 2017)). In a jail world featuring typically ubiquitous camera systems, the Court sees tremendous separation between a background detainee and a detainee in extremity or shown naked. Plaintiff lumps them all together but offers nothing establishing such a breadth of constitutional dimension.[3]

The Court declines to oblige this request. The proponent of a class must affirmatively prove every Rule 23(a) requirement because class actions "magnif[y] the stakes of litigation and can thus have massive ramifications for plaintiffs and defendants alike." *In re Ford Motor Co.*, 86 F.4th 723, 725-26 (6th Cir. 2023). To be sure, Hale has demonstrated that approximately forty-five inmates are depicted in videos posted online. However, this same evidence does not amount to "significant proof" of Hale's proposed class, namely, that the number of inmates that were subjects of the videos posted online without consent is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The evidence in the record does not speak to the number of inmates that are "subjects" in a video posted online. Nor does it reflect which of the forty-five inmates, if any, did or did not consent to the taking or to the publication of the video.

---

[3] And to the extent Plaintiff pivots to Kentucky jail policies, *see* DE 41, at 8 (casting commonality as "either the videoing of the inmates and posting of the videos violated the Commonwealth of Kentucky and/or correctional standards, or they did not"), instead of a constitutional tort, the Court would have real concern about, and would deeply probe, its subject matter jurisdiction under § 1332(d).

The Court cannot look past this requirement in the interest of righting an alleged wrong, as doing so would weaken the exceptional nature of the class action mechanism. Additionally, Hale has made no argument or showing of the number of inmates that would qualify for the subclass. Accordingly, the Court finds that Hale has not affirmatively proven numerosity under Rule 23(a)(1).

And frankly, even if the group reached into the forties, the Court would not find that scope, in this case, substantial enough for joinder to be impracticable. Whatever Plaintiff's identification concerns are, the truth is that the jail population is a closed universe, and one would think that jail rosters and a defined video period would easily facilitate an ability to identify and thus individually include other video subjects that have and choose to assert a claim.

### ii. Commonality

Hale must show that "there are questions of law or fact common to the class[.]" FED. R. CIV. P. 23(a)(2). Stated differently, Hale must "show that there is a common question that will yield a common answer for the class…and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 102 S. Ct. 2364, 2371 (1982)). "To be common, the question must 'allow a decisionmaker to reach a yes-or-no answer for the class 'in one stroke.'" *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 247 (6th Cir. 2024) (quoting *Doster v. Kendall*, 54 F.4th 398, 430 (6th Cir. 2022) (quotation omitted), *judgment vacated on other grounds*, 144 S. Ct. 481 (2023)). To satisfy the obligation of performing a "rigorous analysis," the Court must "examine[] the material elements of each claim and determine[] which ones, if any, yield a common answer." *Id.* at 246. Plaintiff does nearly no direct elemental analysis.

7

Hale's Complaint raises ten claims against Defendants, with certain claims applying to only certain Defendants.  Hale argues that commonality is met with respect to each claim because "[a]ll of the proposed class members' claims live or die for the same reason: either the videoing of the inmates and posting of the videos violated the commonwealth of Kentucky and/or correctional standards of care, or they did not."  DE 41 at 8.[4]  Hale, who has the burden of proof, did not brief the Court on which element of any given claim submits to or turns on this common question.  *Nissan*, 122 F.4th at 246–47.  Nevertheless, and consistent with the Sixth Circuit's analytical framework, the Court will consider each claim and assess whether that common question resolves a central issue.  *Wal-Mart*, 131 S. Ct. at 2551.  However, the Court is mindful that the law requires Hale's common question to resolve an issue in each claim, so failure to show commonality for one claim is dispositive.  *See id.*; *see also Speerly*, 143 F.4th at 317 ("To ensure the questions, whether factual or legal, are central, a court must ensure that they affect at least one element of all 59 claims.") (internal citations omitted).  The Court also notes the generic commonality references in the Complaint.  *See* DE 1 ¶¶ 61-63.

Hale's commonality showing fails at Count I, which alleges a Fourth Amendment "right of privacy" violation under 42 U.S.C. § 1983.  *See* DE 1 at 11-12.  The Fourth Amendment guarantees the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV; *see also California v. Carney*, 105 S. Ct. 2066, 2068 (1985).  "[W]here (1) an individual exhibits an actual, subjective expectation of privacy by seeking to preserve something as private and (2) the expectation is one that society is

---

[4] In the next paragraph, Hale states, "[t]he common question that predominates over the proposed class is: whether all the inmates depicted in the video were filmed without their consent and had their images published without their consent?"  DE 41 at 9.  This assertion is inconsistent with his prior framing and is troublesome because, as Defendants point out, Hale actually requested that Ferguson video Collett and Money stripping his clothes.  *See* DE 46-3 at 2:1-5.  Thus, Hale's personal event would not fit his second framing of the common contention.

prepared to recognize as reasonable…the Fourth Amendment will protect that expectation against government invasion." *United States v. Sturdivant*, 786 F. Supp. 3d 1098, 1107 (N.D. Ohio 2025) (citing *Smith v. Maryland*, 99 S. Ct. 2577 (1979)).

To analyze Hale's commonality argument, the Court must engage in a targeted merits inquiry. Hale contends that inmates have a Fourth Amendment privacy interest in not being photographed or videoed and having that image or video published online without their consent. *See* DE 1 at 12 ¶ 86. As support, Hale's Complaint cites Judge Clay's dissenting opinion in *Sumpter*. There, Judge Clay discussed an inmate's Fourth Amendment right to be free from "strip searches performed in view of other inmates without a legitimate penological justification." *Sumpter*, 868 F.3d at 495 (citing *Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016)).

Hale's commonality argument fails because his common question does not yield a common answer related to the actual theory of liability. *Rikos*, 799 F.3d at 505. Hale does not argue that the search Defendants performed on him was a Fourth Amendment violation. Even if he did, he could not demonstrate commonality among the other documented events because of the varying contexts in which they were performed; a decisionmaker could not make a yes-or-no determination in one stroke on the constitutionality of each "search." *See Nissan*, 122 F.4th at 247. Hale does not argue or offer proof that the other proposed class members were subjected to the same type of search or action. In fact, the deposition testimony indicates that, factually and contextually, the videos themselves share almost no similarities. *See Speerly*, 143 F.4th at 318 ("A question is not common if the answer requires 'evidence that varies from member to member.'" (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016))).

9

Hale primarily argues that the Defendants taking and posting the videos without consent violated Hale's and the proposed class members' Fourth Amendment privacy rights. But there is no Sixth Circuit or Supreme Court precedent—at least, none cited by Plaintiff—that extends the protections of the Fourth Amendment to this context. *Sumpter* and related cases focus on the search of the inmate itself; they do not support Hale's theory about public dissemination implicating Fourth Amendment protections. *See also Stoudemire v. Mich. Dep't of Corrs.*, 705 F.3d 560, 573-74 (6th Cir. 2013). Thus, Hale's common contention does not go to an actual theory of Fourth Amendment liability. Accordingly, given his burden, he cannot show commonality for Count I.

Count II (*Monell* claim), Count III (failure to intervene/bystander liability), Count IV (failure to supervise), and Count V (conspiracy to commit Fourth Amendment violations) face the same dilemma. That is, Hale premises his commonality theory on a Fourth Amendment right to privacy violation. Having found that this inquiry is not common to all proposed class members, Hale fails to show commonality with respect to Counts II through V. And this says nothing about the murky publication means at issue and whether publication resulted in any common way as authored by any named Defendant.

As mentioned above, Count VI relates to Hale's proposed subclass. *See* DE 1 at 19. There is no evidence in the record of any other inmate being a qualified person with a disability under the ADA. The record evidence represents quantitative proof relating to numerosity but does not speak at all to the qualitative features of the other depicted inmates. Hale has failed to show there is a common question or common injury among the proposed subclass with respect to this claim.

Count VII alleges tortious invasion of privacy. *See* DE 1 at 20-21. "The Supreme Court of Kentucky has adopted the Restatement (Second) of Torts' principles for the tort of invasion of

10

privacy." *K.K. by and through J.K. v. Clark Cnty. Bd. of Educ.*, 439 F. Supp. 3d 905, 919 (E.D. Ky. 2020). There are four forms of tortious invasion of privacy under Kentucky law, and Hale does not specify under which form he brings this claim. *See id.* ("An invasion of privacy can occur by: '(a) an unreasonable intrusion upon the seclusion of another....; or (b) appropriation of the other's name or likeness....; or (c) unreasonable publicity given to the other's private life....; or (d) publicity that unreasonably places the other in a false light before the public.'"). Given that Hale's claim is premised on a nonconsensual publication of a video, the Court construes Count VII as alleging unreasonable publicity given to the other's private life.

The elements of that claim are as follows:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652D (1977). Here, commonality is not met because the contents of each video are factually distinct. Where publication of a particular video, possibly even Hale's, may be highly offensive to a reasonable person, other videos may well not reach that level. The Court strongly doubts that mere depiction in a jail setting would qualify, given that charges and detention status are publicly knowable events in the United States. Thus, a decisionmaker could not make a yes-or-no determination regarding whether the matter publicized is "highly offensive to a reasonable person" in one stroke. Thus, Count VII fails to satisfy the commonality requirement. Count IX, alleging gross negligence, and Count X, alleging civil conspiracy, likewise fail to meet the mark on commonality, as they also rely on, among other elements, a tortious act of violating an inmate's right to privacy.

That leaves Count VIII, alleging intentional infliction of emotional distress. A claim of intentional infliction of emotional distress includes the following elements: "(1) intentional or

11

reckless conduct; (2) that was outrageous or intolerable and offends against the generally accepted standards of decency and morality; (3) which caused emotional distress; and (4) the distress was severe." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 293–94 (Ky. Ct. App. 2009) (citing *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky. 1990)).  The common question offered by Hale, whether Defendants violated the applicable (state, one assumes) standards by videoing and posting the videos of the inmates, will not yield a common answer for the entire class in one stroke.  Assuming the common question goes to the second element (because Hale did not specify), whether the videoing and posting of the videos was outrageous or intolerable is a video-specific inquiry that is not amenable to class-wide resolution.  And plainly, the notion of distress and degree would be highly individualized.

Accordingly, the Court finds that Rule 23(a)(2) is not satisfied.

### iii.    Typicality

Rule 23(a)(3) requires Hale to show that "the claims…of the representative parties are typical of the claims…of the class."  FED. R. CIV. P. 23(a)(3).  Typicality focuses on "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.  A claim is typical where "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his…claims are based on the same legal theory." *Id.*  Commonality and typicality "tend to merge in practice." *Whirlpool*, 722 F.3d at 853.

Hale cannot demonstrate typicality either.  Hale argues he can because "[t]he class members' claims all rely on the same basic set of facts: they were inmates at the facility, they were videoed by Defendant Ferguson, and the videos were placed online by either Defendant Ferguson,

12

or Shackleford, or both, without their consent." DE 41 at 9. The Court disagrees; Hale characterizes the facts at too high a level of generality. Hale's claim arises from an incident where BCDC officers removed Hale's clothes and placed him in a smock designed to prevent self-harm. Hale requested the officers video it because he was worried that they would harm him. *See* DE 46-3 at 2:1-5. That video, which apparently exposed Hale's genitalia and depicted his mental health episode, was later published online without Hale's consent. There is no evidence that any other video portrays similar content or was taken under similar circumstances (i.e., at the request of the depicted inmate). Hale's claim therefore does not, fundamentally, arise from "the same event or practice or course of conduct" as the other proposed class members' claims. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. Additionally, Hale's claims are premised on an invasion of his privacy rights. But this determination is assuredly dependent on the invasion itself. For some, like Hale, the invasion appears to be quite intrusive,[5] whereas with others, it is more benign.[6] Hale and the other proposed class members therefore do not share "the same legal theory." *Id.* And certainly, for claims purporting to span multiple iterations of Bell County jailers, the institutional and systemic theories would not share actors or regimes.

Accordingly, the Court finds that Hale has not demonstrated the typicality requirement of Rule 23(a)(3).

### iv. Adequacy of Representation

Finally, Hale must show that he "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and that class counsel will do the same, *see id.* 23(g). *See Bowles*, 121 F.4th at 553. Under this requirement, Hale must be "part of the class and possess the same

---

[5] *See, e.g.*, DE 40-1 at 75 (discussing video of inmate having a seizure), 84 (discussing video of inmate snoring).

[6] *See, e.g.*, DE 40-1 at 81 (discussing a video of inmate singing a song he wrote about being in jail).

interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 117 S. Ct. 2231, 2250-51 (1997). Hale has not shown that the proposed class, the forty-five inmates depicted in the various videos, suffered the same injury as him. For example, Hale alleges that, in relation to Count I, the proposed class and he suffered:

> [A] deprivation of their constitutional rights and suffered severe and permanent emotional and resulting physical injuries, including, but not limited to, post traumatic stress disorder and other severe emotional injuries, and will seek compensation for: past and future medical expenses, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

DE 1 at 13 ¶ 94. But Hale, proceeding to speculate, has offered no evidence to suggest that this injury catalog applies universally to the proposed class members. Take the individual from the video of the inmate singing as an example. Nothing, especially not the song lyrics,[7] indicates that that inmate suffered any of the emotional, physical, or economic injuries alleged in Count I. The effect? Hale's claim may not "fairly and adequately protect" that inmate's interests. FED. R. CIV. P. 23(a)(4). And the same risk exists for the other depicted inmates based on the lack of evidence demonstrating common interest and injury among the class. As such, the Court finds that Hale has failed to demonstrate Rule 23(a)(4).

Though it is of little consequence at this point, the Court is satisfied with Hale's showing of class counsels' ability to fairly and adequately represent the class pursuant to Rule 23(g). *See* DE 41 at 13-15. Hale provided an extensive list of class action litigation in which Counsel Stephen New and his firm have been involved. *See id.* at 14-15. Hale also indicates that much of New's

---

[7] Ironically, the song is about how the inmate appreciates and has no ill-will towards the jailer and the prison staff: "In the town of Pineville by the court house square. There's a county jailer, ain't got no hair. He always rewards us if we ain't been doing nothing wrong. He feeds us chips and a cake and good old Gary dogs. He can't help it that we're all inmates. He's not to blame. We were made this way. So miss us with that trying to call him mean. He keeps us real happy." DE 40-1 at 81-82.

14

practice involves federal civil rights and torts class action suit. *See id.* Defendants do not argue otherwise. Therefore, the Court finds that Hale satisfied Rule 23(g).

In sum, Hale has not satisfied the Rule 23(a) requirements.

**b.      Rule 23(b)**

The Court has determined that Hale failed to satisfy each of the Rule 23(a) requirements. Hale is therefore not entitled to class certification, regardless of the Court's ruling on Rule 23(b) fit, because both subsections (a) and (b) of Rule 23 must be fulfilled. Nevertheless, the Court will analyze Rule 23(b).

Hale's proposed class must fit in one of the three categories enumerated in Rule 23(b)(1)-(3). Hale seeks certification under Rule 23(b)(3). *See* DE 41 at 11. Rule 23(b)(3) has two primary components. The predominance component requires Hale to show that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" FED. R. CIV. P. 23(b)(3). The superiority component requires Hale to prove that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

There is also an implied requirement of "ascertainability" for class certification for Rule 23(b)(3) classes, though neither party truly addressed it. *See Costello v. Mountain Laurel Assurance Co.*, No. 2:22-CV-35, 2024 WL 239849, at *11 (E.D. Tenn. Jan. 22, 2024) (quoting *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020)). In *Young v. Nationwide Mut. Ins. Co.*, the Sixth Circuit held that "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." 693 F.3d at 538 (citing 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)). The Court noted that it must be able to resolve the issue by reference to objective criteria. *See id.* at 538-39. Hale's proposed class definition is not

15

sufficiently definite because, as previously discussed, Hale's use of the word "subjects" arguably would require the Court to make a subjective determination about which inmates depicted in any given video are subjects and which are merely in the background.  *See id.*

### i.      Predominance

Along with having to prove that there "are questions of law or fact common to the class," FED. R. CIV. P. 23(a)(2), Hale must also prove that those questions "predominate over any question affecting only individual members," *id.* 23(b)(3).  The Court must "add up all the suit's common issues (those that the court can resolve in a yes-or-no fashion for the class) and all of its individual issues (those that the court must resolve on an individual-by-individual basis)" and then "qualitatively evaluate which side 'predominates' over the other." *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 300 (6th Cir. 2023).  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Bouaphakeo.*, 136 S. Ct. at 1045 (citing 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).

The Court previously found in Section III.a.ii. that Hale did not establish commonality for any of his claims.  If the Rule 23(a)(2) commonality requirement is not met, then the Rule 23(b)(3) predominance requirement obviously is also not met because the latter is more demanding than the former.  *See Amchem*, 117 S. Ct. at 2250 ("Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding."); *Comcast Corp. v. Behrand*, 133 S. Ct. 1426, 1433 (2013) (recognizing that Rule 23(b)(3)'s predominance criterion is more demanding than Rule 23(a)).  Plaintiff casts the commonality in the broadest possible terms (was there a non-consensual video published without permission?).

16

Each subpart of that limited commonality will turn on individual vignettes, not a common trove of proof.  On the law side, as detailed, the inmate circumstances and claims would vary wildly based on video nature, the subject or background participation, and the elemental marshalling required in the count-by-count analysis.  Plainly, in the Court's view, the low common benefit pales by comparison to the questions affecting only individual members.  And again, the Court simply notes that critical issues like who published any video and whether a claimant would have a time-barred claim would require significant and individuated focus.

### ii.    Superiority

Rule 23(b) requires that Hale prove that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  The class action suit must "beat[] the conventional approach of resolving disputes on a case-by-case bases in terms of efficiency and administrability."  *Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022).  Class actions may be superior to individual litigation where an individual class member does not have the incentive to pursue their suit due to the potential of a small recovery relative to the cost of litigation.  *See Young*, 693 F.3d at 545.  Indeed, "[t]he policy at the very core of the class action mechanism is to overcome" this barrier.  *Id.*  However, "[p]roblems emerge on these predominance and superiority fronts, most acutely, when a controlling issue requires individualized determinations ill-equipped for class wide proof[,]" *Tarrify*, 37 F.4th at 1106, or when "many individual inquiries are necessary[,]" *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020).  That is this case.

Hale generically asserts the recovery-versus-cost argument along with contending that it would be impracticable to identify all unknown inmates that are depicted in the videos and join them.  *See* DE 47 at 10.  Hale's concern with the cost of individual litigation is generally valid, but

he provides no argument or proof about each inmate's potential recovery, making its applicability here questionable. Further, the Court does not find support for the second point about joinder impracticability as a superiority concern, and Hale does not provide supporting caselaw either. In any event, in this case, the Court is persuaded by the Sixth Circuit's stance on superiority when individualized determinations are necessary. *See Tarrify*, 37 F.4th at 1106. This is not a case involving "a single course of wrongful conduct," the type that is "particularly well-suited to class certification." *Young*, 693 F.3d at 545 (quoting *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)). As Hale describes it, the case involves multiple instances of Defendant Ferguson recording inmates at BCDC in varying contexts, with or without their consent, and then those videos being published online by someone, allegedly without their consent. Because individual inquiry into each video must be made, Hale has not shown that class action litigation would be "sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 415-16 (6th Cir. 2018) (citing *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630–31 (6th Cir. 2011)).

Accordingly, Hale has not satisfied the Rule 23(b) requirements.

## IV.    Conclusion

For the stated reasons, after rigorous review and in its discretion, the Court **DENIES** Hale's motion to certify class (DE 40).

This the 30th day of July, 2026.



Signed By:

*Robert E. Wier*

**United States District Judge**

18